John C. MIDDLETON, Appellee

v.

Don ROPER, Appellant.

No. 14–2667.

United States Court of Appeals,
Eighth Circuit.

July 15, 2014.

Michael Joseph Spillane, Asst. Atty. Gen., Jefferson City, MO, for appellant.

Joseph J. Perkovich, New York, N.Y., Richard H. Sindel, Kathryn B. Parish, Sindel, Sindel & Noble, P.C., Clayton, MO, for appellee.

## CORRECTED ORDER

The petition for rehearing en banc is denied. The petition for rehearing by the panel is also denied.

Judge BYE, Judge SMITH and Judge KELLY would grant the petition for rehearing en banc.

Judge BENTON did not participate in the consideration or decision of this matter.

BYE, Circuit Judge, dissenting.

I would grant the petition for rehearing en banc and reinstate the stay of John C. Middleton's execution. I do not believe the district court abused its discretion in concluding that Middleton had made "a substantial threshold showing of insanity." Therefore, I respectfully dissent.

"The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane." *Ford v. Wainwright,* 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). "Under Ford, once a prisoner makes the requisite preliminary showing that his current mental state would bar his execution, the Eighth Amendment ... entitles him to an adjudication to determine his condition." *Panetti v. Quarterman,* 551 U.S. 930, 934–35, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). In a habeas corpus proceeding, "a federal evidentiary hearing is required unless the

state-court trier of fact has after a full hearing reliably found the relevant facts." *Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). No state court has conducted a full fact-finding hearing regarding Middleton's mental competency.

Here, major questions have been raised as to Middleton's mental competency. Evidence in the record suggests Middleton has exhibited significant signs of paranoia, auditory delusions, continued "magical thinking" and a lack of understanding of his pending execution. Middleton's expert witness, Dr. William S. Logan, M. D., a psychiatrist, has evaluated Middleton and made a preliminary determination that Middleton has a delusional disorder which prevents him from fully understanding his execution. Dr. Logan has opined that Middleton lacks a rational understanding of the reasons for his execution and is not competent to be executed due to a diagnosis of delusional disorder, a psychotic mental illness. In addition, Middleton's mental health records from the Missouri Department of Corrections reflect an extensive battery of prescriptions to address anti anxiety, antiseizure, antidepressant, mood stabilization, panic disorder, depression, bipolarity, adjustment disorder and other concerns. Middleton also had been an extensive methamphetamine addict and had suffered several severe head injuries over the years. Further, several of Middleton's fellow inmates submitted affidavits attesting to Middleton's incompetency which support Dr. Logan's preliminary determination. These facts are more than sufficient for Middleton to make a "a substantial threshold showing of insanity," as found by the district court.

A federal court is obligated to conduct an evidentiary hearing if "the factfinding procedure employed by the State court was not adequate to afford a full· and fair

hearing; or the material facts were not adequately developed at the State court hearing; or the applicant did not receive a full, fair, and adequate hearing in the State court proceeding." *Ford*, 477 U.S. at 411, 106 S.Ct. 2595 (internal quotations and citations omitted). I do not believe Missouri has demonstrated that its fact-finding procedures are adequate to fully and fairly evaluate Middleton's competency. In fact, it is unclear to me what process they provide at all. Mo.Rev.Stat. § 552.060.2 simply provides, "If the director of the department of corrections has reasonable cause to believe that any inmate ... sentenced to death has a mental disease or defect excluding fitness for execution, he shall immediately notify the governor who shall forthwith order a stay of execution ... for a determination of the mental condition of such person[.]"

This procedure appears similar to the inadequate process provided by Florida in *Ford*. It is unclear how Middleton is incorporated into the fact-finding process, if at all. *See Ford*, 477 U.S. at 413, 106 S.Ct. 2595 ("The first deficiency in Florida's procedure lies in its failure to include the prisoner in the truth-seeking process."). Instead, the question of competency appears left to the Director of the DOC. Nor does Middleton appear able to challenge or cross-examine any of the evidence upon which the State relies. *See Ford*, 477 U.S. at 415, 106 S.Ct. 2595 ("A related flaw in the Florida procedure is the denial of any opportunity to challenge or impeach the state-appointed psychiatrists' opinions."). Finally, the decision of whether to grant a stay based on competency concerns is left solely to the executive branch, which the Ford court also found problematic. *See Ford*, 477 U.S. at 416, 106 S.Ct. 2595. Because of these deficiencies, the district court did not abuse its discretion in granting Middleton a stay of execution pending a full and fair evidentiary hearing.

I believe the district court properly resolved the question of whether Middleton exhausted his state court remedies. The district court correctly concluded that Missouri Supreme Court Rule 91 is a narrow writ which applies only in certain, enumerated categories. As Middleton has demonstrated, "[p]roceedings under Rule 91 are ... limited to determining the facial validity of confinement." *State ex rel. Simmons v. White*, 866 S.W.2d 443, 445 (Mo.banc 1993), citing Mo.Rev.Stat. §§ 532.430, 532.440. I do not believe Middleton's competency claim falls within the narrow provisions of Rule 91. Thus, if Rule 91 is unavailable to Middleton and the writ of *coram nobis* is also unavailable, it is unclear to me what other avenue he had. In my opinion, it was not possible for Middleton to procedurally default his competency claim if there was no sufficient process available to him in the first place.

In every death penalty action, much is at stake. Here, it is undeniable that a full and fair hearing on the question of Middleton's competency will allow the relevant parties to accurately assess Middleton's mental competency. If, after a full and fair hearing, Middleton is determined to be competent, Missouri can seek a new execution warrant and set a new execution date. However, if it is determined Middleton is not competent, we can feel satisfied that the process ensured the State did not violate the Eighth Amendment of the United States Constitution by executing an incompetent individual. With such serious questions raised as to Middleton's competency, I believe the district court did not abuse its discretion in granting the stay of execution. For these reasons, I would vote to hear the case en banc in order to stay the execution.